**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

*Application w/o signature* *jmc*

In re:                                    Case No. 97-16731 BKC AJC
                                          Chapter  11

L. Luria & Son, Inc.

_____Debtor_____/

## APPLICATION TO WITHDRAW UNCLAIMED FUNDS

Applicant, INQUEST SERVICES, applies to this court for entry of an order directing the clerk of the court to remit to the applicant the sum of $30,635.45, said funds having been deposited into the Treasury of the United States pursuant to 28 U.S.C. § 2041 as unclaimed funds for claimant Tri-County Plaza Associates. Applicant further states that:

1. (Indicate one of the following items:)

   __ Applicant is the individual claimant named in the "Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk" and states that no other application for this claim has been submitted by or at the request of this claimant.

   __ Applicant is the duly authorized representative for the business or corporation named as the claimant in the "Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk". Applicant has reviewed all records of the claimant and states that no other application for this claim has been submitted by or at the request of this claimant. **A local form Affidavit of Claimant (LF-28) and duly executed corporate power of attorney are attached and made a part of this application.**

   XXX Applicant is an attorney or a "funds locator" who has been retained by the claimant. Applicant has obtained an original "power of attorney" from the individual claimant or the duly authorized representative for the business or corporation named as the claimant in the notice of deposit of funds into the court. **An original "power of attorney", conforming to the Official Bankruptcy Form and a Local Form Affidavit of Claimant (LF-28) are attached and made a part of this application.**

   ___ Applicant is either a family member of the deceased claimant or a successor in interest to the individual or business named as the claimant in the notice of

LF-27 (rev. 12/01/03)                    Page 1 of 2

deposit of funds into the court. **An original "power of attorney" conforming to the official bankruptcy form and/or other supporting documents, including probate documents which indicate applicant's entitlement to this claim are attached and made a part of this application.**

2. Applicant has made sufficient inquiry and has no knowledge that this claim has been previously paid, that any other application for this claim is currently pending before this court, or that any party other than the applicant is entitled to submit an application for this claim.

3. Applicant has provided notice to the U.S. Attorney pursuant to 28 U.S.C. § 2042.

Dated: 9/27/05

Tri-County Plaza Associates, LTD.
**Name of Original Claimant**

1972 S. University Drive, 2nd Floor

Davie, FL 33324
**Address**

**Claim #** 1027

**Sworn to and Subscribed before me on** 9/27/05

**NOTARY PUBLIC AT LARGE STATE OF** Florida

Oslenys B. Alba
Commission # DD211948
Expires May 13, 2007
Aaron Notary
1-800-350-5161

**Signature of Applicant**
(Note: In addition to signing, complete all information below)

**Last Four Digits of SS#** _____

Note: Individual applicant must also submit a separate form "Statement of Social Security Number(s) of Unclaimed Funds Applicant/Claimant" as required by Judicial Conference Privacy policy.

**ID#** 4846

Jairo A. Camargo/ Director
*Print Name and Title of Applicant

INQUEST SERVICES, INC.
Print Company Name

P.O. Box 660584
Print Street Address

Miami, FL 33266
Print City and State

305-303-1458
Telephone (including area code)

*Attach corporate power of attorney if applying as authorized representative of non individual claimant.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:  Case No. 97-16731 BKC AJC
Chapter 11

L. Luria & Son, Inc.

_____ Debtor ___/

## AFFIDAVIT OF CLAIMANT

I, Patrick Powers _____ the undersigned claimant (or duly authorized representative for the claimant "business" indicated in paragraph 2) declare as follows:

1. INQUEST SERVICES, INC., P.O. Box 660584, Miami, FL 33266 _____
(Name and Address)

has been granted a power of attorney by me to submit an Application to Withdraw Unclaimed Funds (or I am the duly authorized representative for claimant "business" as indicated in the attached corporate power of attorney) seeking payment of: (indicate a or b)

  a. ( X ) claim number 1027 _____ (if no claim was filed write "scheduled" in blank space) for which the dividend of $ 30,635.45 is due and owing to me or the "business" I represent as claimant in the above referenced bankruptcy case; or

  b. (____) funds deposited in the name of the debtor in the amount of $_____.

2. My name, position with company (if representing a "business" claimant), address and telephone number are as follows: Patrick Powers, Controller
   1972 S. University Drive, 2nd Floor, Davie, FL
   954-423-2714

3. Claimant History: Substantiate claimant's right to funds, including but not limited to documents relating to sale of company, i.e. purchase agreements and/or stipulation by prior and new owner as to right of ownership of funds. Attach certified copies of all necessary documentation, including those which establish the chain of ownership of the original corporate claimant. If attachments contain Social Security number, please attach them to the "Statement of Social Security Number of Unclaimed Funds Claimant/Applicant".

4. I (or the "business" I represent as claimant) have neither previously received remittance for these funds nor have contracted with any other party other than the person named in item one above to recover these funds.

I hereby certify that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: 9/22/05

_____
signature of claimant or representative of "business" claimant
Patrick Powers
print name
Controller
title
XXX XX-4762
Last Four Digits of Social Security # or Tax ID#
(Note: Individual claimant must also submit a separate "Statement of Social Security Number(s) of Unclaimed Funds Applicant/Claimant" as required by Judicial Conference policy)

Sworn to and Subscribed before me
on 9/22/05.

NOTARY PUBLIC, AT LARGE
STATE OF FLORIDA

Jairo A. Camargo
Commission # DD264664
Expires: Nov. 4, 2007
Aaron Notary
1-800-350-5161

LF-28 (rev. 12/01/03)

# LIMITED POWER OF ATTORNEY
(For one transaction only)

I (we), Patrick Powers_____, do hereby grant to **INQUEST SERVICES, Inc.**, my (our) sole true and lawful attorney-in-fact for me (us) and my (our) name, place and stead, giving unto my (our) attorney-in-fact full power to do and perform, on an exclusive basis, all and every act not constituting the practice of law that I (we) may legally do through an attorney-in-fact, for the following <u>limited purpose only and for no other:</u>

To reclaim, recover, and return unclaimed funds in the amount of $ 30,635.45 only.

**This Limited Power of Attorney is specifically limited to the collection and disbursement of the above named funds and shall expire upon completion of this collection.** I (we) authorize the use of a photocopy of this Power of Attorney, in lieu of the original. The person signing this Power of Attorney represents and warrants that he (she) has authority to sign for the corporation.

I (we) do hereby certify that the foregoing is true and correct.

_____     9/22/05
Signature of authorized corporate officer     Date

============================================================

## NOTARY ACKNOWLEDGEMENT

State of FLORIDA

County of BROWARD

SUBSCRIBED AND SWORN on the 22nd day of September, 20 05 before me, personally appeared Patrick Powers, personally known to me or proved to me on the basis of satisfactory evidence (see identification below) to be the person whose name is subscribed to within instrument and acknowledgement to me, that they executed the same in their authorized capacity, and that by their signature on the instrument the person or their entity upon behalf of which the person acted executed the instrument.

**Identification for the above named was Drivers License No. (or specify other identification):** FL DL

WITNESS my hand and official seal,

Signature _____
        Notary Public                    My commission expires:

Jairo A. Camargo
Commission # DD264664
Expires: Nov. 4, 2007
Aaron Notary
1-800-350-5161



# Florida Limited Partnership

## TRI-COUNTY PLAZA ASSOCIATES, LTD.

**PRINCIPAL ADDRESS**
19501 BISCAYNE BLVD., SUITE 400
AVENTURA FL 33180
Changed 05/28/1998

**MAILING ADDRESS**
19501 BISCAYNE BLVD., SUITE 400
AVENTURA FL 33180
Changed 05/28/1998

| Document Number | FEI Number | Date Filed |
|---|---|---|
| A26265 | 650044762 | 04/13/1988 |
| **State** | **Status** | **Effective Date** |
| FL | ACTIVE | NONE |
| **Last Event** | **Event Date Filed** | **Event Effective Date** |
| AMENDMENT | 05/28/1998 | NONE |

**Actual Contribution**
4,953,557.00

## Registered Agent

| Name & Address |
|---|
| ROMINE, MARIO<br>19501 BISCAYNE BLVD., SUITE 400<br>AVENTURA FL 33180 |
| Name Changed: 05/28/1998 |
| Address Changed: 05/28/1998 |

## General Partner Detail

| Name & Address | Document Number |
|---|---|
| TOWER SHOPS, INC. | |



19501 BISCAYNE BLVD., SUITE 400

AVENTURA FL 33180

P98000046210

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2003 | 05/01/2003 |
| 2004 | 04/28/2004 |
| 2005 | 04/27/2005 |

[Previous Filing]    [Return to List]    [Next Filing]

View Events
No Name History Information

## Document Images
Listed below are the images available for this filing.

```
04/27/2005 -- ANNUAL REPORT
04/28/2004 -- ANNUAL REPORT
05/01/2003 -- ANNUAL REPORT
03/22/2002 -- ANNUAL REPORT
04/26/2001 -- Annual Report
04/28/2000 -- Annual Report
10/23/1998 -- ANNUAL REPORT
05/28/1998 -- Amendment
04/09/1998 -- REINSTATEMENT
```

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**




# AMENDED AND RESTATED
# MANAGEMENT AGREEMENT

THIS AMENDED AND RESTATED MANAGEMENT AGREEMENT ("Agreement") is made and entered into as of the 11th day of May, 1998, by and between TRI-COUNTY PLAZA ASSOCIATES, LTD., a Florida limited partnership, hereinafter referred to as "OWNER" and SHOPPING CENTER MANAGEMENT d/b/a TURNBERRY ASSOCIATES, a Florida general partnership, hereinafter referred to as "MANAGER," with respect to the following:

MANAGER is engaged in the business of servicing, managing, leasing and maintaining real estate properties. OWNER is the owner of a certain Shopping Center commonly known as the Tower Shops located in Davie, Florida ("Shopping Center"). OWNER desires to hire MANAGER to, and MANAGER has agreed to, operate the Shopping Center in accordance with the terms and conditions hereinafter set forth.

In consideration of the foregoing and of the mutual covenants, conditions and agreements hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I

## EMPLOYMENT OF CONTRACTOR

OWNER hereby employs MANAGER and MANAGER hereby accepts such employment to operate and manage the Shopping Center upon the terms and conditions hereinafter set forth.

## ARTICLE II

## TERM

The term of this Agreement shall commence as of May 11, 1998 and shall remain in full force and effect for so long as the OWNER is the owner of the Shopping Center, unless and until OWNER gives notice of termination to MANAGER or MANAGER gives notice of termination to OWNER, in accordance with the provisions of Article IX hereof. Upon termination, OWNER shall remain bound by the obligations of all contract for services, supplies and alterations which MANAGER has entered into in connection with the performance of its obligations hereunder.

## ARTICLE III

## INDEPENDENT CONTRACTOR

In the performance of the Agreement, MANAGER shall act solely as an independent contractor. Neither this Agreement nor any agreements, instruments, documents, or transactions contemplated hereby shall in any aspect be interpreted, deemed or construed as making MANAGER a tenant, partner, joint ventures with, or agent of (including an agency coupled with an interest) OWNER.

## ARTICLE IV

## DUTIES OF MANAGER

1. Forecast of Operations:

MANAGER shall prepare annually, at the request of and in consultation with the OWNER, an annual forecast of operations for the ensuing calendar year in form and content satisfactory to OWNER ("Annual Forecast") and furnish same to OWNER on or before the 1st day of each year.

2. Collection of Revenue:

MANAGER shall promptly collect all revenues and other income issuing from the tenants at the Shopping Center in connection with their respective leases ("Leases"), as and when such amounts become due, and shall deposit such amounts into a bank account designated by OWNER.

MANAGER shall further monitor and enforce all of the terms and provisions of the Leases and from time to time advise OWNER regarding any material defaults in connection therewith.

3. Normal Maintenance and Upkeep:

From time to time during the term of this Agreement, MANAGER shall recommend to OWNER to take such actions as are customary or advisable to insure that the Shopping Center is maintained in an attractive condition and good state of repair, subject to availability of funds provided by OWNER. In connection therewith, MANAGER shall arrange for landscaping, painting, cleaning, plumbing, utility and repair services for the Shopping Center and shall from time to time arrange to service the reasonable requests and complaints of any tenants of the Shopping Center. MANAGER agrees that all persons engaged or otherwise employed by it to perform or otherwise undertake the aforementioned services or activities shall be qualified to perform and undertake the same. In the event of any such engagement or employment, all costs and expenses incurred in connection therewith shall be paid by

MANAGER from funds designated for such use by OWNER, provided however, that no payment shall be made for any one service performed for which the cost of such exceeds $5,000.00 without the prior consent of OWNER, with the exception of normal monthly operating expenses. MANAGER shall be under no obligation to expend any of its own funds to provide such service. By no later than the 30th day of each month, MANAGER shall submit to OWNER an itemized statement showing all disbursements made during the preceding calendar month as a result of services performed at the Shopping Center.

4. <u>Major Work of Improvement, Repair and Restoration:</u>

From time to time during the term of this Agreement, MANAGER, with OWNER'S representative, shall make an inspection of the Shopping Center at a time mutually agreed upon. The MANAGER shall call to the attention of OWNER any condition of the Shopping Center which, in order to be rectified properly, would require some form of work of improvement, repair or restoration (hereinafter "work of improvement") in or to the Shopping Center. As to each work of improvement for which the cost would exceed $25,000.00, MANAGER shall supply to OWNER a complete capital expense budget or proposal contract therefor and upon approval thereof by OWNER, MANAGER, at OWNER'S sole expense and with the use of OWNER'S funds, shall engage contractors, repairmen, builders or such other persons and take such steps as may be necessary to insure that all such work of improvement is performed properly and without delay. Any contract which MANAGER intends to enter into on behalf of the OWNER with any of the aforesaid persons for any of the aforesaid purposes shall be subject to the prior approval of OWNER. As used herein, the term "work of improvement" shall have the broadest possible meaning and shall include, without limitation, real or personal property, maintenance work, work performed in connection with utilities, plumbing, painting, construction work, and all similar or related types of work or services with respect to the Shopping Center. Upon completion of any of the aforesaid work of improvement, MANAGER shall submit to OWNER a complete and itemized written statement of all work performed and a designation as to whom payment was made. Lien releases and/or waivers of lien will be obtained wherever appropriate.

5. <u>Appraisal:</u>

MANAGER shall cooperate with any appraiser or counsel retained by OWNER to evaluate the Shopping Center property or to appeal assessed values, but shall not be responsible or liable for such undertakings.

6. <u>Books of Account and Record:</u>

MANAGER shall maintain full and complete books and records on an accrual basis with all receipts and expenditures arising from the operation and management of the Shopping Center. Such books of account and records shall be the property of

MANAGER and shall at all times during regular business hours be open to the inspection by OWNER at MANAGER'S office. By no later than the 30th day of each month MANAGER shall submit to OWNER financial reports for the preceding calendar month during the term of this Agreement.

OWNER, at its sole discretion, may require annual audits by an independent Certified Public Accountant. Said audits, if performed, are to be at OWNER'S sole expense and payable from funds designated for said use by OWNER. MANAGER upon reasonable notice will make available its accounting records, documents and reports to the auditors as designated by OWNER to MANAGER, for inspection during MANAGER'S regular business hours.

## ARTICLE V

## AGENTS, EMPLOYEES AND CONTRACTOR

MANAGER, on behalf of OWNER, and at OWNER'S sole expense, shall employ, discharge, supervise, and pay all agents, employees, and contractors required for the efficient operation and maintenance of the Shopping Center. All such personnel conclusively shall be, and shall be deemed to be for all purposes, agents, employees and contractors of MANAGER and not agents, employees or contractors of OWNER and OWNER shall not be responsible for any of said employees' acts, defaults or negligence or for any error of judgment or mistake of law or fact in connection with their contracts or employment. Throughout the term of this Agreement, employees of MANAGER who handle or are responsible for monies of OWNER shall, at the request of OWNER, be covered by a fidelity policy pursuant of Article VII hereof and, upon OWNER'S demand, MANAGER shall present to OWNER evidence of such insurance and payment of the premium therefor.

OWNER shall insure that the MANAGER has sufficient monies in the property's general account to pay all expenses arising from or in connection with this Agreement or as may otherwise be required by law for the management of the Shopping Center.

## ARTICLE VI

## SAVE HARMLESS, INDEMNIFICATION, DEFENSE OF CLAIMS

Subject to the provision of Article V, OWNER agrees:

1. To hold and save MANAGER harmless from all claims for damages or injuries to persons or property which occur in or about the Shopping Center or elsewhere when MANAGER is carrying out the provisions of this Agreement or acting under the express or implied directions of OWNER.

2. To reimburse MANAGER upon demand for any monies which MANAGER is required to pay in connection with, or as an expense in defending against, any claim, civil or criminal action, proceeding, charges or prosecution made, instituted or maintained against MANAGER arising from or in connection with this Agreement.

3. To defend promptly and diligently, at its expense, any claim, action or proceeding brought against MANAGER and OWNER, or either of them, arising out of or connected with any of the foregoing, and to hold harmless and fully indemnify MANAGER from any fine, judgment, loss or settlement on account thereof, including reasonable attorney's fees and costs (appellate or otherwise).

## ARTICLE VII

## INSURANCE

The MANAGER shall review, from time to time, any and all such insurance of any kind or nature, including but no limited to fire, theft, public liability, plate glass, elevator, boiler and workmen's compensation insurance obtained and paid for by the OWNER in connection with the Shopping Center. Concurrently, with the submission of each Annual Forecast, the MANAGER, at OWNER'S request, shall furnish the OWNER with a schedule setting forth the kinds of amounts, coverage and premium costs of insurance then in effect for the Shopping Center and make recommendations and/or comments concerning same to the OWNER. The OWNER further covenants and agrees that all policies of insurance shall name the OWNER, the MANAGER, and such other parties as may be required by the provisions of any mortgage or ground lease as the insureds thereunder, as their respective interests may appear.

MANAGER shall, at OWNER'S request, obtain and keep in effect a fidelity insurance bond in such amount as OWNER may request. Such policy shall cover MANAGER and its agents and employees. The cost of premiums for the policies of insurance described herein shall be paid by OWNER.

## ARTICLE VIII

## MANAGER'S COMPENSATION

As compensation for MANAGER'S services hereunder, within fifteen (15) days following the end of each month, for the prior month, OWNER shall pay MANAGER as follows:

(a) OWNER shall pay MANAGER as the fee for its management services three (3%) percent of all gross revenue generated in connection with the Shopping Center from the preceding month; and

(b) leasing fees equivalent to four (4%) percent of rental revenues for space leased to new tenants and two (2%) percent of rental revenues for existing tenant lease renewals.

## ARTICLE IX

## PROVISIONS FOR EARLY TERMINATION

1. Options to Terminate:

Notwithstanding anything that may be contained herein to the contrary, with or without grounds or cause therefore, either party hereto may terminate this Agreement at any time by giving the other ninety (90) days written notice.

2. Effect of Termination:

Upon the effective date of termination of this Agreement, MANAGER shall forthwith cease and desist from any further performance of its duties and obligations hereunder. MANAGER shall:

(a) deliver all gross revenues and income of the Shopping Center on hand and in any bank accounts which are the monies of OWNER, after the payment to MANAGER of any amounts owed by OWNER to MANAGER under this Agreement;

(b) deliver any monies due OWNER under this Agreement but received after such termination;

(c) deliver to OWNER all materials and supplies, keys, contracts and documents, and such other accounting, paper and records pertaining to the Agreement as OWNER shall reasonably request;

(d) within forty-five (45) days after such termination, make any remaining payment to OWNER which is then due and owing to OWNER;

(e) within ninety (90) days after any such termination, deliver to OWNER the profit and loss statement for the fiscal year or portion thereof ending on the date of termination; and

(f) do and deliver such further things and comply with such further reasonable requests of OWNER in connection with said termination.

## ARTICLE X

## MISCELLANEOUS

1.   All notice, requests, demand or other communications hereunder shall be in writing, and shall be deemed to have been duly given if delivered in person, or by United States mail, certified or registered, prepaid, with return receipt requested as of the date of delivery or attempted delivery thereof, or otherwise actually delivered:

    (a)   If to OWNER:

        Tri-County Plaza Associates, Ltd.
        c/o Tower Shops, Inc.
        19501 Biscayne Blvd.
        Suite 400
        Aventura, FL 33180

or such other address or addresses as OWNER may have furnished to MANAGER in writing.

    (b)   If to MANAGER:

        Shopping Center Management d/b/a
        Turnberry Associates
        19501 Biscayne Blvd.
        Suite 400
        Aventura, FL 33180

or such other address or addresses as MANAGER may have furnished to OWNER in writing.

2.   <u>Entire Contract</u>:

This Agreement constitutes the entire contract between the parties and there are no other understandings, representations or warranties, oral or written, relating to the subject matter hereof which shall be deemed to exist or to bind any of the parties hereto.

3.   <u>Confidentiality</u>:

MANAGER and its officers, directors, employees and agents shall not reveal any information regarding the financial condition or operation of the Shopping Center or OWNER without prior notice to OWNER, or unless required by due process of law.

4.  **Attorney's Fees and Costs:**

If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary disbursement in addition to any other relief to which such party may be entitled.

5.  **Governing Law; Venue; Assignment:**

This Agreement shall be governed by and be construed and enforced in accordance with the laws of the State of Florida, and venue shall be in Dade County Florida. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement may no be assigned without the express written consent of the parties hereto.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of May 11, 1998.

WITNESS:

OWNER:
TRI-COUNTY PLAZA ASSOCIATES, LTD.,
a Florida limited partnership

By: Tower Shops, Inc., a Florida corporation, its sole general partner

By: _____
Print Name: Donald Soffer
Title: President

WITNESS:

MANAGER:
SHOPPING CENTER MANAGEMENT
d/b/a Turnberry Associates, a Florida general partnership

By: _____
Print Name: Jacquelyn Soffer
Title: Agent

11762_1.doc

***Turnberry Associates***
1972 S. UNIVERSITY DRIVE, 2ND FLOOR
DAVIE, FLORIDA 33324
(954) 423-2714 • FAX: (954) 236-0089
email: powersp@turnberry.com

PATRICK POWERS
PROPERTY MANAGEMENT CONTROLLER

